21730. DEPENDABLE INSURANCE
COMPANY, INC. v. GIBBS.

Argued July 10, 1962—Decided September 18, 1962—
Rehearing denied October 1, 1962.

*D. C. Campbell, Jr., H. G. Rawls,* for plaintiff in error.

*John R. Rogers,* contra.

MOBLEY, Justice. ■ Ga. L. 1960, p. 500 (*Code* § 56-1201) provides as follows: "Except for actions arising against unauthorized insurers or under surplus line contracts which are provided for in Chapter 56-6, whenever any person shall have a claim or demand on any insurer, such person may institute suit in any of the following places: . . . (4) In any county where the property covered by an insurance contract upon which an action is brought is located or where the person entitled to the proceeds of an insurance contract upon which action is brought maintains his legal residence. For the purpose of this subsection personal property shall be deemed to be located in the county of the legal residence of the owner thereof, and for the purpose of bringing suit under this subsection a company which has written a contract of insurance upon persons or property located in a particular county, or which has become surety for the performance of an obligation in a particular county shall be deemed to be transacting business in such county and shall be deemed to be a legal resident of such county; Provided further, that any action or suit on the bond of a sheriff, or other arresting or law enforcement officer, upon which any guaranty or surety company or fidelity insurance company is bound and obligated as surety, shall be instituted in the county of the residence of such officer, and not in any other county; and the county of the residence of such officer is hereby fixed as the venue of any action or suit on such bond; and such officer may be made a party defendant or may by intervention become a party defendant."

Because this case is not one of the types enumerated in Para-

graphs I through V of Art. VI, Sec. XIV of the Constitution (*Code* §§ 2-4901 through 2-4905), it must according to Paragraph VI of that article and section (*Code* § 2-4906) be tried "in the county where the defendant resides." Plaintiff's allegations as to the jurisdiction of the Superior Court of Turner County over defendant are based solely on Ga. L. 1960, p. 500 (*Code* § 56-1201(4)), those allegations being that the suit was brought on an insurance policy covering personal property located in Turner County; that plaintiff is the person entitled to the proceeds of the insurance policy; that plaintiff on the date of the making of the contract, and on the date of the alleged breach was, and on the date of the suit is, a legal resident of Turner County; that therefore the defendant is a legal resident of Georgia and of Turner County within the meaning of § 56-1201(4). Defendant in its plea to the jurisdiction alleges that it is a corporation, that it has no agent, office or place of business in Turner County, and that therefore it cannot reside in Turner County within the meaning of Georgia Constitution Art. VI, Sec. XIV, Par. VI (*Code* § 2-4906).

Thus the issue presented is whether or not the General Assembly may constitutionally provide that a corporation engaged in business as an insurer is for the purpose of the venue of suits of this type a legal resident within the meaning of Art. VI, Sec. XIV, Par. VI of the Constitution (*Code* § 2-4906) of the county in which the property covered by the insurance contract upon which action is brought is located, *or* in the county where the person entitled to the proceeds of an insurance contract upon which action is brought maintains his legal residence.

The Constitution Art. VI, Sec. XIV, Par. VI (*Code* § 2-4906) applies to corporations as well as to natural persons and therefore a corporation must be sued in the county of its residence unless the case comes within one of the exceptions set out in the Constitution. *Central Bank of Ga. v. Gibson,* 11 Ga. 453 (2); *McCall v. Central of Ga. R.,* 120 Ga. 602, 604 (48 SE 157); *Northern Contracting Co. v. Maddux,* 144 Ga. 686 (1) (87 SE 892); *Lloyd Adams, Inc. v. Liberty Mut. Ins. Co.,* 190 Ga. 633, 637 (10 SE2d 46); *Benton Rapid Express v. Johnson,* 202 Ga. 597, 598 (43 SE2d 667). Numerous cases have held that the

General Assembly has the power to declare the residence of corporations. *Davis v. Central R. & Bkg. Co.*, 17 Ga. 323, 336; *Georgia R. & Bkg. Co. v. Oaks*, 52 Ga. 410 (2); *Merritt v. Cotton States Life Ins. Co.*, 55 Ga. 103 (2); *Savannah F. & W. R. Co. v. Atkinson*, 94 Ga. 780, 783 (21 SE 1010); *Gilbert v. Georgia R. & Bkg. Co.*, 104 Ga. 412, 416 (30 SE 673); *McCall v. Central of Ga. R.*, 120 Ga. 602, 604 (48 SE 157); *Jefferson Fire Ins. Co. v. Brackin*, 140 Ga. 637 (79 SE 567); *Central Ga. Power Co. v. Stubbs*, 141 Ga. 172, 181 (80 SE 636); *Citizens & Sou. Bank v. Taggart*, 164 Ga. 351, 356 (138 SE 898); *Martin & Thompson v. Allen*, 188 Ga. 42, 44 (2 SE2d 668); *Speed Oil Co. v. Aycock*, 188 Ga. 46 (1) (2 SE2d 666). Some of these cases just cited are, we, think, particularly significant.

In *Gilbert v. Georgia R. & Bkg. Co.*, 104 Ga. 412, supra, the act of 1892 (now *Code* § 94-1101) was challenged as violative of the venue in county of residence provision of the Constitution of 1877 (now Art. VI, Sec. XIV, Par. VI of the Constitution of 1945; *Code* § 2-4906) in that by permitting a tort suit to be brought against a railroad in the county where the cause of action originated without regard to whether or not the railroad had an office, agent or place of business in the county it allowed a railroad to be sued in a county other than the county of its residence. That act provided that: "All railroad companies shall be sued in the county in which the cause of action originated by any one whose person or property has been injured by such railroad company . . . and also on all contracts made or to be performed in the county where suit is brought." The court held the act constitutional, relying on *Davis v. Central R. & Bkg. Co.*, 17 Ga. 323, supra, and reasoning as follows: "It was there held [in the *Davis* case] that the act of the General Assembly which permitted railroad companies to be sued in counties other than the county in which the principal office of the company was located was constitutional and valid, the ground upon which the decision was based being that the General Assembly had a right to declare what was the residence of all persons both natural and artificial. If the General Assembly could declare that a railroad company resided in every county through which its lines of road run, it was undoubtedly

within its power to declare also that suits against railroad companies should be brought in the counties where the cause of action in each case arose. The constitutional provision simply prescribes that the suits must be brought in the county of the defendant's residence, and the whole subject of domicile and residence of persons both natural and artificial is left to be determined by the General Assembly."

In *Central Ga. Power Co. v. Stubbs,* 141 Ga. 172, supra, a tort action was brought against an electric power company under Ga. L. 1912, p. 68, § 4 (now *Code* § 94-1101). Citing the *Davis* and *Gilbert* cases, supra, the court held the statute constitutional as against a challenge under the residence provision of the Constitution of 1877 (now Constitution of 1945, Art. VI, Sec. XIV, Par. VI; *Code* § 2-4906) stating that it was immaterial whether the electric company had an agent, agency, or home office in the county, or whether its transmission lines were located there, it being sufficient, under the act, that the cause of action originated there.

These cases state the rule that Article VI, Sec. XIV, Par. VI simply prescribes that suits of types other than the listed exceptions shall be brought in the county of the defendant's residence and since neither that constitutional provision nor any other section in the Constitution provides where a corporation shall reside, the whole subject of the residence of corporations is left to be determined by the General Assembly. They proceed on the theory that when the General Assembly enacted that suits against certain corporations could and should under certain circumstances be filed in the county where the cause of action arose, this constituted an implied designation of that county as the residence of the corporation, at least for the purpose of that suit. *Martin & Thompson v. Allen,* 188 Ga. 42, 45, supra; *Lloyd Adams, Inc. v. Liberty Mut. Ins. Co.,* 190 Ga. 633, 638, supra.

Ga. L. 1960, p. 500 (*Code* § 56-1201(4)) is not unconstitutional as violative of Art. VI, Sec. XIV, Par. VI of the Georgia Constitution, because that constitutional provision contains no restriction as to where a defendant shall reside but rather merely declares that in whatever county a defendant may reside,

there shall he be sued unless the case falls within one of the constitutional exceptions contained in Paragraphs I through V of Art. VI, Sec. XIV.

■ Defendant contends that the legislative designation of it as a resident of Turner County where it has no place of business, domicile, agent, office or other indicia of residence deprives it of its property without due process of law in violation of Georgia Constitution Art. I, Sec. I, Par. III (*Code* § 2-103). "Due process of law means the administration of general laws according to established rules, not violative of the fundamental principles of private right, by a competent tribunal having jurisdiction of the subject matter, and proceeding upon notice and hearing." *Norman v. State,* 171 Ga. 527 (2) (156 SE 203). "The fundamental idea in due process of law is that of 'notice' and 'hearing' . . . Without notice and opportunity to be heard, there is no jurisdiction to pass judgment." *Mott v. Georgia State Bd. of Examiners in Optometry,* 148 Ga. 55, 59-60 (95 SE 866). "Where the legislature of this State has enacted laws for the government of its courts while exercising their respective jurisdictions, which, if followed, will furnish to the parties the necessary protection of life, liberty, and property, it has complied with its duty to furnish due process of law to a defendant charged with a crime." *King v. State,* 174 Ga. 432 (3c) (163 SE 168).

In our opinion the statute meets all the requirements of the due process clause of the Constitution. Due process does not require that an action against a defendant be brought in the county of his residence. In *Youmans v. Hickman,* 179 Ga. 684 (177 SE 238), this court held that a natural person who does business as a motor common carrier of property cannot by reason of the provision of Ga. L. 1931, p. 205, which provides that actions "against motor common carriers, except in those cases where the Constitution of the State otherwise provides, may be brought and maintained in any county or militia district where the action could be brought if the defendant were a railroad company being sued in a like cause of action," be sued in any county other than the county of his residence because there exists a general law fixing the residence of individuals, and the

legislature cannot declare that he is a resident of another county at the same time. The court's ruling was not based on failure to provide due process of law. This court has repeatedly upheld the validity of statutes providing that corporations operating as railroads and electric companies may be sued in the county where the tort was committed or the contract was made or was to be performed, without regard to whether the corporation has an office, agent, or place of doing business within the county. *Gilbert v. Georgia R. & Bkg. Co.*, 104 Ga. 412, supra; *Central Ga. Power Co. v. Stubbs*, 141 Ga. 172, supra.

In the unanimous opinion of this court in the *Central Ga. Power Co.* case, supra, it was held that the act of 1912, p. 68 (*Code* § 94-1101), which provides that railroads and electric companies may be sued in the county where the tort was committed or the contract was made or was to be performed, and if it has no agent in the county upon whom service may be perfected, then service may be had by second original, did not violate the due process clause of the Georgia Constitution.

The act under consideration which permits an action to be maintained against an insurer in the county of the residence of the holder of the policy, or in the county where the property is located, is similar in effect to the provision of *Code* § 94-1101 which states that a railroad or electric company may be sued in the county where the contract is to be performed. The statute does not deny due process of law.

■ Defendant has attacked Subsection 4 of the act as violative of Art. I, Sec. I, Par. II of the Constitution (*Code* § 2-102) providing that "protection to person and property is the paramount duty of government and shall be impartial and complete," on the ground that the act makes an unreasonable classification of insurance companies, denying to defendant the impartial and complete protection of the law in that it expressly excepts from its operation insurance companies which are bound and obligated as surety upon the bond of sheriffs or other arresting or law enforcement officers and furnishes no legitimate ground for this differentiation, and further, that this classification is unreasonable and has no fair or substantial relation to the object of the legislation.

The object of the legislation is to fix the venue of actions against insurers on their contracts of insurance. Is the classification unreasonable and arbitrary and the protection afforded insurance companies not impartial and not complete because the act exempts those insurers bound and obligated as surety on the bonds of sheriffs and other arresting or law enforcement officers and provides that suits on such bonds shall be brought in the county of the residence of such officer? The primary purpose of this provision is to protect sheriffs and law enforcement officers, whose duties are primarily performed in the county of their residence. The peculiar nature of their duties, requiring the arrest and imprisonment of those charged with violations of the laws, dealing with dangerous criminals, or with drunk or disorderly persons, lunatics and others of warped mind, subjecting them to unusual danger and requiring extraordinary action on their part, thereby increasing the risk of liability to unfounded actions against them, justifies the classification and renders it reasonable.

■ The exception to the overruling and denying of the plea to the jurisdiction on the ground that the application of the act to the defendant would be unconstitutional as violative of Art. I, Sec. III, Par. II of the Constitution (*Code* § 2-302) providing that "no Bill of Attainder, ex post facto law, retroactive law . . . shall be passed" not having been argued by counsel for plaintiff in error in his brief or orally before this court is treated as abandoned. *Franklin v. Sing-Wilkes, Inc.*, 215 Ga. 596, 598 (2) (112 SE2d 618).

■ We now turn to the grounds of the motion for new trial. The general grounds not having been argued before this court are considered as abandoned. *Gee v. McDowell*, 214 Ga. 273, 274 (1) (104 SE2d 445).

■ In special ground 4 of the amended motion defendant complains of the admission of six letters designated plaintiff's exhibits "F-1" through "F-6" on the ground that they represent negotiations between the insurance company and counsel for plaintiff in the effort to settle the claim. All of the letters in question were written to plaintiff's attorney by agents of defendant. Exhibit "F-1" states in substance that plaintiff's attorney's

letter of December 21st was the first notice defendant had received of plaintiff's problems and that the letter would be forwarded to defendant's local agent with instructions to contact plaintiff's attorney. Exhibit "F-2" states which portions of the automobile were not repaired to the satisfaction of plaintiff and that these repairs would be completed in a few days. Exhibits "F-3" and "F-4" state no more than that an agent of the insurance company would get in touch with plaintiff's attorney concerning the claim. Exhibit "F-5" sums up all phases of the claim and on those facts states that the insurance company has fulfilled its legal obligation under the policy and owes plaintiff nothing. Exhibit "F-6" reaffirms the position of the defendant that it has fulfilled its legal obligations under the policy.

We are unable to find in any of the letters in question any "admissions or propositions made with a view to a compromise." *Code* § 38-408. Therefore the letters were not inadmissible for the reason urged in this ground of the amended motion.

■ Special ground 5 complains that the trial court erred in charging the jury as follows: "I charge you that if you find, under the evidence and under the rules of law given you in charge, that the defendant elected to repair the automobile, under the terms of the policy, and that the repairs made by the defendant were improper and not reasonably suited for the purpose intended, that the plaintiff would be entitled to recover in damages from the defendant the difference in the market value of the automobile immediately before the collision and the combined amount of its market value immediately after being repaired by the defendant plus the $100 deductible, provided the market value of the automobile before the collision was greater than the combined amount of the market value of the automobile after the repairs and the $100 deductible, as provided in the policy," in that the charge stated an incorrect method of computing the damages, the correct amount being "the amount it would have taken to have properly completed the repairs to the vehicle, less the $100 deductible."

A suit on a policy of insurance being a suit upon a contract, the measure of the insurer's liability must be determined accord-

ing to the terms of the contract. *United States Fidelity &c. Co. v. Corbett,* 35 Ga. App. 606, 610 (134 SE 336). The pertinent provisions of the contract of insurance in the present case are as follows: "To pay for loss caused by collision the owned automobile or to a non-owned automobile but only for the amount of each such loss in excess of the deductible amount stated in the declaration as applicable hereto." "The limit of the company's liability for loss shall not exceed the actual cash value of the property, or if the loss is of a part thereof the actual cash value of such part, at the time of loss, nor what it would then cost to repair or replace the property or such part thereof with other of like kind and quality, nor the applicable limit of liability stated in the declaration . . . ." "The company may pay for the loss in money, or may repair or replace the damaged or stolen property."

In the *United States Fidelity &c. Co.* case, supra, the suit was upon a policy of insurance covering "actual loss or damage" to an automobile "caused solely by accidental collision with another object," the contract providing that "in any event the company shall be liable only for the actual cost of repairing, or, if necessary, replacing the parts damaged and destroyed." The court, following the rule of strict construction against the insurer, held that the undertaking of the company to insure the owner against "actual loss or damage" was the primary obligation of the insurer under the contract, the correct measure of its liability being the difference between the value of the property immediately before the injury and its value immediately afterwards, and that the stipulation that liability should not exceed the cost of repair or replacement was a subordinate provision, limiting or abating the primary liability, to be pleaded defensively if the insurer would diminish or limit the amount of recovery by reason thereof. The reasoning of Judge Bell in that case is, in our opinion, sound, and following it we hold that the primary obligation of the insurer was to pay for the loss caused by collision and that the correct measure of that loss would be the difference in the market value of the automobile immediately before the collision and the combined amount of its market value immediately after being repaired, plus the $100 deductible.

This measure of damages has been recognized in other jurisdictions as the proper measure of damages under an automobile collision insurance policy where the insurer elected to make repairs and did so defectively. See 43 ALR2d 346, and cases cited. Therefore this ground is without merit.

■ Special ground 6 complains of the trial court's charging *Code Ann.* § 56-1206, relative to the returning of a verdict for penalties and attorney's fees upon a finding that the insurance company in bad faith refused to settle the claim, on the ground that the plaintiff's contentions as to bad faith were unsupported by the evidence.

Refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there is any reasonable ground for the insurer to contest the claim, there is no bad faith and it is error for the trial court to charge the jury under this Code section that they may return a verdict for penalties and attorney's fees. *Pearl Assurance Co. v. Nichols,* 73 Ga. App. 452 (5) (37 SE2d 227); *Gulf Life Ins. Co. v. Moore,* 90 Ga. App. 791, 792 (6) (84 SE2d 696). A careful review of the evidence discloses that the insurance company refused to pay plaintiff on the ground that it had already completely performed its legal obligation by repairing the automobile, as it had the right to do under the policy. The insurance company thus refused to pay reasonably believing that it had a valid ground to contest the claim. Its refusal to pay was not, therefore, a frivolous and unfounded denial of liability such as to authorize the trial court to charge relative to bad faith.

Plaintiff in error having obtained a substantial modification of the judgment against it, the costs of bringing the case to this court are taxed against the defendant in error. *Code* § 6-1703; *Hartley v. Hartley,* 212 Ga. 62 (90 SE2d 555).

Judgment affirmed on condition that plaintiff write off the amounts awarded as damages and attorney's fees for bad faith within ten days after receipt by the trial court of the remittitur from this court; otherwise reversed. The costs of bringing the case to this court are taxed against the defendant in error. All the Justices concur, except Duckworth, C. J., who dissents.

DUCKWORTH, Chief Justice, dissenting. Where the Constitution (*Code Ann.* § 2-4906; Constitution of 1945, Art. VI, Sec. XIV, Par. VI) provides that all suits are to be tried "in the county where the defendant resides," the location of the residence of the defendant is an ultimate fact to be determined by proper evidence, and the legislature is unauthorized to attempt to bypass this constitutional requirement by enacting into law *Code Ann.* § 56-1201 (4) (Ga. L. 1960, p. 500) which, in effect, reverses the provision and intent of the Constitution by declaring the residence of the plaintiff or location of plaintiff's property to be the residence of the defendant. It is, therefore, unconstitutional and void, and for this reason alone I dissent.