PIONEER NATIONAL TITLE INSUR-
ANCE COMPANY, formerly Guaranty
Title Insurance Company, Plaintiff-Ap-
pellee-Cross Appellant,

v.

AMERICAN CASUALTY COMPANY OF
READING, PENNSYLVANIA, Defend-
ant-Appellant-Cross Appellee.

No. 72–1131

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

May 1, 1972.

---

* ██ Rule 18, 5 Cir.; See Isbell Enter-
prises, Inc. v. Citizens Casualty Com-
pany of New York et al., 5 Cir. 1970,
431 F.2d 409, Part I.

Sam F. Lowe, Jr., Atlanta, Ga., for defendant-appellant; Smith, Cohen, Ringel, Kohler, Martin & Lowe, Atlanta, Ga., of counsel.

William H. Major, Thomas Henry Nickerson, Atlanta, Ga., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Pioneer National Title Insurance Company (Pioneer), formerly Guaranty Title Insurance Company (Guaranty), brought suit against American Casualty Company of Reading, Pennsylvania (American), to recover upon a fidelity bond issued to Guaranty by American and to recover a statutory penalty and attorney's fees pursuant to Georgia Code Annotated § 56–1206.[1] On cross-motions for summary judgment, the district court entered judgment in favor of Pioneer on the fidelity bond in the amount of $48,012.00 ($40,072.00 on the bond plus legal interest in the amount of $7,940.00) with interest thereon at the legal rate and judgment in favor of American on Pioneer's claim for a penalty and attorney's fees under § 56–1206. We affirm as to American's liability under the bond and reverse and remand for further proceedings as to Pioneer's entitlement to recovery under § 56–1206.

On June 11, 1959, American issued to Guaranty a fidelity bond covering Guaranty's employees. As a result of detailed discussions between officials of American and Guaranty, the following definition of "employee" was written into the bond:

"Wherever used in this bond, Employee and Employees shall be deemed to mean one or more of the officers, clerks and other natural persons in the service of the Insured and all attorneys who perform legal services for the Insured or employees of such attorneys while performing such services, or any individual engaged by the Insured for the purpose of representing the Insured at real estate closings while such individual is performing the usual functions of the Insured at such closings; *including, but not limited to, all the Insured's approved attorneys.*" (Emphasis supplied)

1. Georgia Code Annotated § 56–1206 reads: "Liability of insurer for damages and attorney's fees.—In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 25 per cent. of the liability of the insurer for the loss and all reasonable attorney's fees for the prosecution of the case against the insurer. The amount of such reasonable attorney's fees shall be determined by the trial jury and shall be included in any judgment which is rendered in such action: Provided, however, such attorney's fees shall be fixed on the basis of competent expert evidence as to the reasonable value of such services, based on the time spent and legal and factual issues involved, in accordance with prevailing fees in the locality where such suit is pending: Provided, further, that the trial court shall have the discretion, if it finds such jury verdict fixing attorney's fees to be greatly excessive or inadequate, to review and amend such portion of the verdict fixing attorney's fees without the necessity of disapproving the entire verdict. The limitations contained in this section in reference to the amount of attorney's fees are not controlling as to the fees which may be agreed upon by the plaintiff and his attorney for the services of such attorney in the action against the insurer."

Suit below was based on the failure of one of Guaranty's approved attorneys, John M. Hames, to remit the proceeds of three real property sales to his client in transactions as to which Guaranty issued title binders at Hames' request.

The district court's ruling on the motions for summary judgment accurately summarizes the underlying facts:

"In 1965, John M. Hames represented his long time client Advance Mortgage Corporation at three real estate closings in which property previously foreclosed by Advance was resold to new purchasers and contemporaneously refinanced. In each transaction, Hames requested from Guaranty a title binder which was issued upon a certificate made by him. Advance instructed Hames to close each transaction by transferring title from Advance to the purchaser by warranty deed, taking back from the purchaser a security deed running in favor of Advance, insured by a title insurance policy as the first lien on the property as security for the loan, and remitting to Advance the net proceeds of the sale after closing costs, real estate commissions, and other expense.

"Because Advance was both selling the property and financing the purchases, the loans it made represented the purchase price to be remitted to Advance. This loan-sell transaction was performed by Hames handing the purchaser a check which the purchaser endorsed and handed back to Hames as payment for the property. In each of the three closings, Hames failed to remit all of the property payment funds to Advance.

"Relying on a letter in which Guaranty had promised to protect Advance from loss, if one of Guaranty's approved attorneys during a closing converted to his own use money due Advance, Advance brought suit against Guaranty. American Casualty refused to defend Guaranty, since American Casualty denied Hames was an employee of Guaranty within the mean-

ing of the fidelity bond; and the suit ended in a judgment on January 31, 1969 (Civil Action No. 10,161, Northern District of Georgia) against Guaranty. Now Guaranty claims that American Casualty is liable to it under the terms of the fidelity bond and under a Georgia statute providing for penalty and attorney fees against an insurer who in bad faith has refused to pay its insured."

The district court concluded:

1. The action was not barred by the twenty-four month limitations period provided for in the fidelity bond.

2. Attorney Hames was an employee of Guaranty, within the bond's definition of that term, at the time he failed to remit the funds from the closings to Advance Mortgage Corporation.

3. Guaranty's denial, in the suit brought against it by Advance Mortgage, that Hames, at the defalcation, was a Guaranty employee, did not preclude Pioneer in this suit against American on the fidelity bond, from asserting that Hames was such an employee as defined in the bond.

4. As a result of Hames' misconduct, Guaranty suffered a loss for which Pioneer was entitled to recover under the terms of the fidelity bond.

5. There was no evidence that American's refusal to defend and indemnify Guaranty in the action instituted by Advance Mortgage was in bad faith because the Georgia courts had not previously construed a "really similar insurance policy".

6. American was entitled to summary judgment dismissing the claim by Pioneer for penalty and attorney fees under Georgia Code Annotated, § 56–1206.

On this appeal, American challenges the district court's entry of summary judgment against it with respect to liability under the fidelity bond by the following reasoning: Guaranty was held liable to Advance Mortgage on the basis of Guaranty's letter; Hames, when he

improperly converted the proceeds of the closings, was acting solely in his capacity as attorney for Advance Mortgage; and the district court, in granting Pioneer's motion for summary judgment with respect to American's liability under the bond, improperly resolved material issues of disputed fact concerning Hames' inclusion within the category of covered employees of Guaranty for purposes of the fidelity insurance policy issued by American.

■■ Our review of the record persuades us that the district court correctly concluded, upon motion for summary judgment, that Hames was a Guaranty employee at the time of his defalcation for purposes of the fidelity bond. The above-quoted excerpt from the bond defining the term "employee" was inserted at the insistence of Guaranty for the express purpose of providing protection to Guaranty in the event that one of its approved attorneys, acting in a transaction involving title binders issued by Guaranty at the attorney's request, breached his fiduciary duties to his own client. The record reveals that Hames' name was supplied by Guaranty to American as one of the former's approved attorneys to enable American to compute the premium to be charged from Guaranty. (Page 47, Joint Appendix) Finally, we perceive no bar to Guaranty's maintenance of this action in Guaranty's denial of Advance Mortgage's claim that Hames, at the time of the breach of his duties to Advance Mortgage, was an employee of Guaranty. It appears to us to be clear that Guaranty's denial was simply interposed in an effort to insulate itself from liability to Advance Mortgage, and was never intended to be a disclaimer of Hames' coverage under the fidelity bond issued by American.

With respect to American's liability to Pioneer under Georgia Code Annotated § 56–1206, however, we believe that the district court did not comply with the provisions of Rule 56(c), Federal Rules of Civil Procedure,[2] in granting American's motion for summary judgment. As noted above, the district court found an absence of bad faith on American's part in disclaiming responsibility for Hames' misconduct because the Georgia courts had not previously construed the provisions of a similar policy of insurance. We believe that in so ruling, the district court endeavored to resolve an issue which Georgia law would, initially, reserve for the trier of the facts.

In Dependable Insurance Co., Inc. v. Gibbs, 1962, 218 Ga. 305, 127 S.E.2d 454, suit was brought against an insurer to recover under an automobile collision policy. The Georgia Supreme Court held that the insured was not entitled to recovery of penalties and an attorney's fee where the insurer refused to pay on the ground that repairs for which it had paid amounted to complete performance of its policy obligation to the insured. The court noted:

"Refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there is any reasonable ground for the insurer to contest the claim, there is no bad faith and it is error for the trial court to charge the jury under this Code section that they may return a verdict for penalties and attorney's fees . . ." 218 Ga. at 316, 127 S.E.2d at 461.

Belch v. Gulf Life Insurance Co., 1964, 219 Ga. 823, 136 S.E.2d 351, was an action by a life insured's widow against the insurer for accidental death benefits. The Court held that evidence supported the finding that the insured, whose business was opened on the day of his death and who was not shown to have written a note found beside his body and who allegedly was not despond-

---

2. Rule 56(c), Federal Rules of Civil Procedure, in pertinent part provides:

   ". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

ent on the day he died, had accidentally shot himself, as was claimed by the widow. In denying statutory penalties and attorney's fees to the widow, the Georgia Supreme Court observed:

"We are of the opinion that the evidence did not authorize a finding by the jury that the insurance company acted in bad faith in refusing to settle the claim for the added $1,000 provided under the policy for accidental death, and that the judgment of the Court of Appeals holding that the finding for attorney's fees and penalty was unauthorized was correct. Refusal to pay in bad faith under the terms of Code Ann. § 56–1206 means a frivolous and unfounded denial of liability. 'If there is any reasonable ground for the insurer to contest the claim, there is no bad faith,' and it is error to award penalty and attorney's fees. Dependable Ins. Co., Inc. v. Gibbs [1962], 218 Ga. 305, 316 [8], 127 S.E.2d 454 [461], and cases cited. In this case, where the evidence would have supported a finding of suicide by the jury, a finding of bad faith on the part of the insurance company in refusing to pay the claim could not be sustained." 219 Ga. at 828, 136 S.E. 2d at 354.

This Court affirmed the district court's denial of statutory attorney's fees and penalty under Georgia Code Annotated § 56–1206 in American Casualty Company v. Ten Tex Corporation, 5 Cir. 1966, 357 F.2d 269. Speaking through Judge Coleman, we held that the insurer did not act in bad faith, for purposes of § 56–1206, when it refused pay for the fire loss of a building owned by the insured which the Georgia Rating Bureau and the insured's other insurers had described by a street number different from the one appearing in the policy.

■ Whether the refusal of American to defend Guaranty in the suit instituted by Advance Mortgage was in "bad faith" is a matter capable of resolution only upon a trial in the district court. The fact that both parties in this case moved for summary judgment on the issue of liability under § 56–1206 does not militate against remand to the district court for further proceedings on the issue of "bad faith". As Professor Moore notes in his treatise on Federal Practice:

"The well-settled rule is that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed". Paragraph 56.-13, page 2247, Moore's Federal Practice.

See, Volunteer State Life Insurance Co. v. Henson, 5 Cir. 1956, 234 F.2d 535, 537.

The judgment of the district court awarding judgment in favor of Pioneer against American on the fidelity bond is affirmed. The portion of the judgment of the district court dismissing Pioneer's claim for penalty and attorney's fee under § 56–1206 is reversed and the cause is remanded for further proceedings concerning the existence of "bad faith" on the part of American.

The costs of this appeal shall be assessed equally between the parties. (Rule 39(a), F.R.A.P.).